Filed 12/10/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Respondent, <br><br>           v. <br><br> BRYANT EUGENE HARRISON, <br>     Defendant and Appellant. | A170760 <br><br> (Solano County <br> Super. Ct. No. WR2400393) |

Defendant Bryant Eugene Harrison, a military veteran, was sentenced in 1995 to an indeterminate life sentence for assaulting and causing the death of a child under Penal Code section 273ab.[1] The offense was his first and only felony conviction. In 2024, Harrison filed a resentencing petition under section 1170.91, which allows a trial court to consider reducing the sentence of qualified military veterans who may have suffered from service-related conditions. He now appeals from the trial court's summary denial of that petition.

The narrow issue presented here is whether Harrison was entitled to a hearing on his petition. Contending that the legislative history of the amendment to section 1170.91 in 2022 shows that a major purpose of the Legislature was to expand the statute's benefits to indeterminately sentenced defendants, Harrison argues he was entitled to a hearing under section

---

[1] Undesignated statutory references are to the Penal Code.

1170.91.  The People disagree.  They see no need to consider legislative history and instead rely on the text of section 1170.91, subdivision (c), arguing it unambiguously excludes Harrison under an eligibility carveout that excludes anyone who has committed an offense described by section 667, subdivision (e)(2)(C)(iv), which lists so-called "super strike" offenses for purposes of the "Three Strikes" law.

The People's argument rests on a simple premise:  Harrison's 1995 conviction for violating section 273ab was a violent and serious offense for which an indeterminate life sentence was imposed.  And since, as such, the offense qualifies as one described by section 667, subdivision (e)(2)(C)(iv)(VIII), Harrison is ineligible for resentencing under the unambiguous terms of section 1170.91, subdivision (c), because he has been "convicted of" a super strike.

Harrison's rejoinder, offered in reply, is that section 1170.91, subdivision (c) covers only Three Strikes offenders.  He claims he "was only convicted of one felony, which itself carried an indeterminate life sentence[,]" and his "indeterminate life sentence is not the result of the Three Strikes Law in any way."  "Consequently," he contends, "he is not rendered ineligible" by section 1170.91, subdivision (c).

We agree with the Attorney General.  Although, on its face, Harrison's resentencing petition adequately pleaded resentencing eligibility, any error in failing to hold a hearing was not prejudicial because the undisputed facts shown by his record of conviction demonstrate he is ineligible for resentencing under section 1170.91 as a matter of law.

## I.

In 1995, Harrison, then 36 years old, was convicted of one count of violating section 273ab for assaulting his four-month-old daughter, causing

her death.  Pursuant to former section 273ab, he was sentenced to a state prison term of 15 years to life.[2]  The record does not show, and the People do not contend, that Harrison had any other felony conviction prior to his section 273ab conviction.  A 1995 unverified probation report Harrison submitted below states only, "The defendant does have a prior record, consisting mostly of DUI's . . . ."

In February 2024, Harrison, representing himself from state prison, filed a petition for a writ of habeas corpus (habeas petition), asserting two grounds for relief and citing section 1170.91.  First, he contended he had suffered a traumatic brain injury while on duty in the United States military, which injury was not considered as a mitigation factor in his sentencing.  Second, he contended he had suffered from substance abuse, specifically alcohol, from the time he enlisted in the military in 1976 until some years after his time in the service, in 1990, which abuse also was not considered as a mitigation factor in his sentencing.

In April 2024, the trial court denied Harrison's habeas petition on the ground that habeas corpus relief was not available when a plain, speedy, and adequate remedy was provided by law—in Harrison's case, by section 1170.91.  The court acknowledged Harrison had attached to his habeas petition a form petition for resentencing pursuant to section 1170.91, but ruled he was required to file it separately with the court.

A few weeks later, still in April 2024, Harrison, again representing himself from state prison, filed what he styled as an "Addendum for Resentence."  He stated in its first paragraph that this filing was intended as a petition for resentencing under section 1170.91 based on health conditions

_____

[2] Section 273ab has since been amended to provide for a sentence of 25 years to life.  (§ 273ab, subd. (a); Stats. 1996, ch. 460, § 2, p. 2814.)

3

due to military service (resentencing petition). He again attached, among other things, a form petition for that purpose. On this form petition, he again alleged as relevant health conditions traumatic brain injury and substance abuse and that the sentencing judge did not consider these health conditions as a factor in deciding his sentence.

On April 26, 2024, without conducting a hearing on Harrison's resentencing petition, the court denied what it characterized as Harrison's "addendum petition for resentencing pursuant to . . . section 1170.91 (a) and (b)." The court's brief denial order says, "The defendant has failed to state a prima facie case for the relief sought" and provides no further explanation.

This timely appeal followed.

## II.

Harrison argues we should reverse the trial court's orders denying both his habeas and resentencing petitions because the trial court erred by failing to deem them petitions for resentencing under section 1170.91 and conduct a public hearing as required by that statute. He contends his filing of section 1170.91 form petitions as part of his habeas and resentencing petitions was sufficient to meet the statutory requirements of section 1170.91 and establish a prima facie case for relief under section 1170.91.

The People contend the trial court did not err because Harrison is statutorily ineligible for resentencing relief under section 1170.91. According to them, subdivision (c), which was added in 2022 along with other amendments to section 1170.91, excludes Harrison from section 1170.91's

4

benefits because his 1995 conviction is on a cross-referenced list of disqualifying offenses under section 667, subdivision (e)(2)(C)(iv).[3]

Harrison disagrees, contending that section 1170.91, subdivision (c), by its cross reference to section 667, subdivision (e)(2)(C)(iv)—which is a creature of the Three Strikes law—excludes only those persons convicted under the Three Strikes law's super strike provisions. For this interpretation of section 1170.91, Harrison relies on section 1170.91's legislative history, as noted above.

For the reasons explained below, we reject Harrison's argument and agree with the People.

## A.

Section 1170.91, subdivision (b)(1) provides, "A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in the case, to request resentencing if the circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in

---

[3] Section 667, subdivision (e)(2)(C)(iv), is part of the Three Strikes law. (See Stats. 1994, ch. 12, § 1, p. 71, adding Pen. Code, § 667, subds. (b)–(i); Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994), adding Pen. Code, § 1170.12.) The Three Strikes law governs when it is pled and proved that a defendant convicted of a felony has been previously convicted of one or more felonies defined as serious or violent. (Pen. Code, §§ 667, subd. (c), 1170.12, subd. (a); see *id.,* §§ 667, subds. (d), (e), (f), 1170.12, subds. (b), (c), (d).)

mitigation at the time of sentencing." Section 1170.91, subdivision (b)(3) provides, "Upon receiving a petition under this subdivision, the court *shall determine, at a public hearing* held *after not less than 15 days' notice to the prosecution, the defense, and any victim of the offense*, whether the person satisfies the criteria in this subdivision."[4] (Italics added.) In *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, the panel reversed a summary denial of a proper petition for failure to conduct such a hearing. (*Id.* at pp. 237–238.)

Here, as in *Bonilla-Bray*, the court appears to have been required to proceed to a public hearing under section 1170.91, subdivision (b)(3), based on the form petition Harrison filed. Although the trial court did not explain why it concluded that Harrison failed to make a prima facie case, the proper procedural sequence laid out in section 1170.91, subdivision (b)(3), calls for a public hearing. Notably, the statute does not require an *evidentiary* hearing. It simply requires a "public hearing" on 15 days' notice to interested parties at which a "determin[ation]" of entitlement will be made. Such a hearing was

---

[4] Section 1170.91, subdivision (b)(3) specifically provides, "At that hearing, the prosecution shall have an opportunity to be heard on the petitioner's eligibility and suitability for resentencing. If the person satisfies the criteria, the court may, in the interest of justice, and regardless of whether the original sentence was imposed after a trial or plea, do either of the following:

"(A) Reduce the defendant's term of imprisonment by modifying the sentence.

"(B) Vacate the conviction and impose judgment on any necessarily included lesser offense or lesser related offense, whether or not that offense was charged in the original pleading, and then resentence the defendant to a reduced term of imprisonment with the concurrence of both the defendant and the district attorney of the county in which the defendant was sentenced or by the Attorney General if the case was originally prosecuted by the Department of Justice."

mandatory here, even if it took only a minute or two to put some procedural deficiency in the petition on the record as the ground for denial.

But that still leaves the issue of prejudice. We may affirm if it can be shown that the summary denial of Harrison's petition was harmless. (Cf. *People v. Lewis* (2021) 11 Cal.5th 952, 973 [failure to appoint counsel as required by former § 1170.95 was state law error, reviewable for harmlessness under *People v. Watson* (1956) 46 Cal.2d 818].) Courts have applied *Watson* prejudice analysis in this very procedural context. In *People v. King* (2020) 52 Cal.App.5th 783, the panel held that, assuming the trial court erred in summarily denying a petition rather than holding a hearing, the error was harmless because King, having agreed to a stipulated sentence when he was convicted, was not entitled to relief under section 1170.91 as it was constituted at that time. (*King*, at pp. 789–791, accord, *People v. Brooks* (2020) 58 Cal.App.5th 1099, 1108–1109.)

Even assuming Harrison is right that he adequately pleaded his eligibility for resentencing, he cannot show prejudice because the undisputed fact of his 1995 conviction for assaulting his daughter with such force that it caused her death in violation of section 273ab renders him ineligible for resentencing relief as a matter of law.

**B.**

Section 1170.91 entitles qualifying military veterans to seek resentencing for the purposes of considering whether the veteran suffered brain trauma, substance abuse, and various other mitigating conditions in the course of military service. (*People v. Estrada* (2020) 58 Cal.App.5th 839, 841.) In 2022, the Legislature amended section 1170.91 in a number of significant ways, including by bringing within its purview defendants serving indeterminate sentences and adding a section excluding certain defendants from the statute's benefits. These amendments and the prior history of

7

section 1170.91 were summarized concisely by a Fourth District, Division One panel in *People v. Sherman* (2023) 91 Cal.App.5th 325, as follows.

"Section 1170.91 was enacted in 2014. The original statute merely required courts to consider as a mitigating factor for determinate sentencing certain specified qualifying conditions the defendant may be suffering as a result of his or her military service—sexual trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems. (Former § 1170.91, added by Stats. 2014, ch. 163, § 2, eff. Jan. 1, 2015; [citation].) As amended, this sentencing provision is now contained in section 1170.91, subdivision (a).

"In 2018, the Legislature added subdivision (b) to section 1170.91. Subdivision (b) authorizes retrospective relief for previously sentenced criminal defendants who may suffer from one of the qualifying conditions as a result of their military service. As originally enacted, subdivision (b) allowed a defendant who was sentenced before January 1, 2015, to petition the court for a recall of the sentence and request resentencing 'pursuant to subdivision (a)' if his or her qualifying condition 'was not considered as a factor in mitigation at the time of sentencing.' (Former § 1170.91, subd. (b)(1)(A), as amended by Stats. 2018, ch. 523, § 1, eff. Jan. 1, 2019.) Like subdivision (a), subdivision (b) originally applied only to defendants who were eligible for determinate sentences. [Citation.]

"In 2022, the Legislature amended the statute again. (Stats. 2022, ch. 721, § 1, eff. Jan. 1, 2023.) The 2022 amendment both expanded and restricted eligibility for relief. In relevant part, it expanded subdivisions (a) and (b) to include those serving indeterminate sentences; it eliminated the requirement that the defendant must have been sentenced before January 1, 2015, to be eligible for resentencing; and it added a provision explicitly

8

stating that subdivision (b) 'shall apply retroactively' (§ 1170.91, subd. (b)(10)). At the same time, however, it restricted eligibility by adding subdivision (c), a carve-out provision stating that '[t]his section does not apply to a person convicted of, or having one or more prior convictions for, an offense specified in clause (iv) of paragraph (C) of paragraph (2) of subdivision (e) of Section 667 or an offense requiring registration pursuant to subdivision (c) of Section 290.' (§ 1170.91, subd. (c).) These changes became effective on January 1, 2023." (*People v. Sherman*, *supra*, 91 Cal.App.5th at pp. 329–330.)

To this summary drawn from *Sherman*, we add a structural observation. Section 1170.91 consists of three different subdivisions. The first, subdivision (a), authorizes the trial court to consider service-related mitigation factors when *newly sentencing* eligible military veterans who have just been convicted of an offense but in the same proceeding.[5] The second, subdivision (b), authorizes the trial court to rely on service-related mitigation factors to *resentence* eligible military veterans post-judgment.[6] The third,

---

[5] Subdivision (a) states: "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the defendant's military service, the court shall consider the circumstance as a factor in mitigation when imposing a sentence. This consideration does not preclude the court from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation."

[6] Subdivision (b) states in relevant part: "(1) A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service may petition for a recall of sentence, before the trial court

9

subdivision (c), excludes from eligibility for sentencing relief (subdivision (a)) or resentencing relief (subdivision (b)) persons who have committed specified offenses.

Section 1170.91, subdivision (c), states: "This section"—referring to section 1170.91 as a whole—"does not apply to *a person convicted of*, or having one or more prior convictions for, *an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667* or an offense requiring registration pursuant to subdivision (c) of Section 290." (Italics added.)

## C.

The applicable principles governing our interpretation of section 1170.91 are familiar and well-settled. " ' "When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls. [Citation.]" [Citation.] If the language of the statute is ambiguous, a court "can look to legislative history [citation] and to rules or maxims of construction" to resolve the ambiguity.' [Citation.] ' " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' " ' [Citation.]

" ' "We do not . . . consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes.

that entered the judgment of conviction in the case, to request resentencing if the circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing."

10

[Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory framework as a whole." ' [Citation.] A statute's legislative history and the circumstances of its enactment may be considered in ascertaining legislative intent." (*Sutter's Place, Inc. v. California Gambling Control Com.* (2024) 101 Cal.App.5th 818, 832–833.)

**1.**

Turning to the application of these principles here, we begin with the statutory text. Harrison suffered a serious and violent felony conviction in 1995, for which he was sentenced to 15 years to life in state prison. This offense is listed in section 667, subdivision (e)(2)(C)(iv), as a "serious or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv)(VIII).) The Attorney General argues that, as a result, Harrison falls within the disqualifying clause, section 1170.91, subdivision (c), and is ineligible for resentencing relief as a matter of law under the plain language of the statute. We agree.

Resisting this conclusion, Harrison claims that section 1170.91, subdivision (c), "discusses two situations: (1) a person convicted *of* a listed super-strike, and (2) a person having one or more convictions *for* a listed super-strike." "If (1) and (2) are describing the same type of situation," Harrison claims, "the way the [Attorney General] reads it, (2) becomes superfluous." He asserts that the statutory wording disqualifies from resentencing eligibility only a defendant with a *prior* super strike conviction at the time he suffers the conviction for which resentencing is sought.

According to Harrison, the legislative history shows that the addition of the phrase "convicted of" was added to clarify that the exclusionary clause applies both to sentencing for new convictions and to resentencing on prior convictions. That may be so—structurally, Harrison is correct, since

11

subdivision (c) does indeed apply to section 1170.91 as a whole—but we fail to see how attributing this drafting change to clarification advances his cause. "[W]e generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and . . . '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*).) And upon a straightforward reading that gives meaning to both of the key phrases in section 1170.91, subdivision (c)—"convicted of" and "having one or more prior convictions"— the plain import of the words is that if a defendant was "convicted of" a listed super strike, whether as a first-time offense or as a prior offense, he is disqualified.

**2.**

There is, to be sure, a textual hook that might support the argument Harrison makes here, but it is not in section 1170.91. It is in section 667, subdivision (e)(2)(C)(iv), the cross-referenced list of disqualifying offenses in section 1170.91, subdivision (c). Under the precept that context matters in statutory interpretation, we must scrutinize section 667, subdivision (e)(2)(C)(iv) closely, since by this cross-reference, the Legislature indicated it intends these two statutes to be read together.

Section 667, subdivision (e)(2)(C)(iv) begins as follows: "The defendant suffered a *prior* serious or violent felony conviction . . . for any of the following felonies." (Italics added.) There follows, in section 667, subdivision (e)(2)(C)(iv)(I) through (VIII) a list of offenses colloquially known as super strikes. (*Valencia*, *supra*, 3 Cal.5th at p. 351.) The word "prior" signals that the listed super strike convictions must have been suffered at some point in time before the current offense of conviction. For confirmation of that, we need look no further than the structure of section 667, subdivision (e)(2)(C), which distinguishes between disqualifying "current offense[s]" (§ 667, subd.

12

(e)(2)(C)(i)–(iii)) and disqualifying "prior . . . conviction[s]" (*id.*, subd. (e)(2)(C)(iv)).

The broader context is also relevant. The concept of super strikes as codified in section 667, subdivision (e)(2)(C)(iv)(I) through (VIII) was first introduced into California law as an exception to the revised sentencing rules added by Proposition 36 (also known as the Three Strikes Reform Act of 2012), the November 6, 2012 ballot initiative statute (Proposition 36 or the Reform Act) limiting life term sentences under the Three Strikes law to serious or violent third strike offenses. (*People v. Johnson* (2015) 61 Cal.4th 674, 681–682, 693.) Designed to serve as a carveout to the Reform Act, super strikes are a subset of "particularly serious or violent felonies." (*Valencia, supra*, 3 Cal.5th at p. 351 & fn.3; see § 667, subd. (e)(2)(C)(iv)(I)–(VIII).)[7]

---

[7] Under the Three Strikes law as originally enacted in 1994, "[w]hen a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law '[n]otwithstanding any other law.'" (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 505 [citing former §§ 667, subd. (c), 1170.12, subd. (a)].)

The Three Strikes law was revised with the enactment of Proposition 36 in 2012. "Prior to the enactment of Proposition 36, a defendant who had two or more prior serious or violent felony convictions was subject to a sentence of 25 years to life upon any new felony conviction. (Former §§ 667, subds. (b)–(i), 1170.12.) Proposition 36 amended sections 667 and 1170.12 to require courts to impose life sentences only where the new offense is not just any felony offense, but a serious or violent offense, unless the prosecution pleads and proves certain disqualifying factors. In all other cases, the defendant will be sentenced as a second strike offender." (*People v. Spiller* (2016) 2 Cal.App.5th 1014, 1019–1020.)

The Proposition 36 disqualifying factors include commission of certain felony sex offenses, crimes involving the use of a firearm or deadly weapon during the commission of a crime or the intent to cause great bodily injury to another person, and crimes involving the possession of substantial quantities of a controlled substance. (§§ 1170.126, subd. (e)(2), 667, subd. (e)(2)(C)(i)–

13

When we read section 1170.91 together with section 667, subdivision (e)(2)(C)(iv)—with its express reference to "prior" convictions—arguably there is a basis to conclude that the words "convicted of" in section 1170.91 may be read to mean defendant has suffered a *prior* super strike, not that his *current* conviction is a super strike.

While this argument has some appeal at first blush, we are ultimately unpersuaded. Even if section 667, subdivision (e)(2)(C)(iv), when read independently, might lend some support to Harrison's position, we remain convinced that the plain language of section 1170.91, subdivision (c), covers super strikes suffered by first-time offenders. The only plausible interpretation of the disjunctive phrase "convicted of, or having one or more prior convictions" disqualifies him. On its face, section 1170.91, subdivision (c), covers defendants who are *either* "convicted of" a super strike as a first offense, *or* who "hav[e] one or more prior" super strike convictions suffered in some previous proceeding. Harrison's argument to the contrary would require us to read "convicted of" as meaning the same thing as "having one or more prior" disqualifying convictions, which would make "convicted of" surplusage. (*Valencia*, *supra*, 3 Cal.5th at p. 357.) This we decline to do.

A similar issue arose under Proposition 47 (as approved by voters, Gen. Elec. (Nov. 4, 2014)) (Proposition 47) and the case law construing it. A disqualifying clause in the Proposition 47 resentencing scheme, like section 1170.91, subdivision (c), borrows disqualifying language from Proposition 36, except that the operative wording in the Proposition 47 scheme lacks any reference to persons "convicted of" a super strike. Section 1170.18 sets forth

---

(iii), 1170.12, subd. (c)(2)(C)(i)–(iii).) Also disqualifying—and particularly notable here because section 1170.91, subdivision (c), borrows from this feature of Proposition 36—is any prior super strike conviction. (§§ 1170.126, subd. (e)(3), 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv).)

14

the Proposition 47 resentencing procedure under which certain felonies may be redesignated as misdemeanors. The disqualifier there, tracking Proposition 36, reads as follows: "This section does not apply to a person who has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290." (§ 1170.18, subd. (i).)

Courts have been called upon to construe what the word "prior" means in section 1170.18, subdivision (i). Unanimously, these courts have answered that, under section 1170.18, subdivision (i), "prior" means a conviction suffered at any time before a Proposition 47 resentencing proceeding.[8] Because of the disjunctive phrase "convicted of, or having one or more prior convictions" (§ 1170.91, subd. (c)), the question we have here is somewhat different. But the additional disjunctive language, if anything, indicates that—cognizant of how Proposition 47 has been interpreted—the Legislature chose to provide even more clearly in section 1170.91 that first-time super strikers *as well as* those with past super strike convictions are disqualified.

Harrison argues that if we were to adopt the Attorney General's plain language reading of section 1170.91, subdivision (c), we would be excluding from the ambit of the statute "all life sentences, including indeterminate life sentences for relief under the statute, such as the one Appellant is serving." The point is not without force, at least superficially, since one of the primary purposes of the Legislature's 2022 amendments to section 1170.91 was to extend its ameliorative benefits to indeterminately sentenced defendants. It

---

[8] See *People v. Walker* (2016) 5 Cal.App.5th 872, 876–877; *People v. Casillas* (2017) 13 Cal.App.5th 745, 751–752; *People v. Montgomery* (2016) 247 Cal.App.4th 1385, 1389–1391; *People v. Zamarripa* (2016) 247 Cal.App.4th 1179, 1183–1184.

is true that the list of disqualifying offenses cross-referenced in section 1170.91, subdivision (c), ends with a catch-all category that is stated in sweeping terms: "Any serious or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv)(VIII).) And read literally, it is hard to imagine that any indeterminately sentenced defendant would *not* be covered by this clause. But does that mean the Legislature inadvertently added a disqualifier that effectively defeats its objective of giving indeterminately sentenced defendants the benefit of resentencing consideration under section 1170.91?

We think not. In *People v. Hernandez* (2017) 10 Cal.App.5th 192, a Sixth District panel held that section 667, subdivision (e)(2)(C)(iv)(VIII) refers to "an offense that itself has an associated statutory punishment of life imprisonment or death, not an offense such as robbery, which has an associated statutory punishment of two, three, or five years." (*Id*. at p. 202.) Under *Hernandez*—which we believe is soundly reasoned—a defendant sentenced to a Three Strikes life term for commission of robbery as a third strike would still be eligible for section 1170.91 resentencing. Thus, Harrison overstates the breadth of the People's position in this appeal. While the Attorney General's reading of section 1170.91, subdivision (c), disqualifies those who committed particularly egregious strike offenses at any time (using super strikes as a proxy for egregiousness), it does not disqualify *all* indeterminately sentenced life prisoners.

Notably, Harrison fails to offer a competing interpretation of section 1170.91, subdivision (c), to which the statutory text is reasonably susceptible. His argument is that, by cross-referencing section 667, subdivision (e)(2)(C)(iv), the drafters of the 2022 amendments to section 1170.91 showed an intent to exclude from resentencing eligibility only those defendants who

16

received a life term under the Three Strikes sentencing scheme as amended by the Reform Act. In essence, he argues that, since he was a first-time offender when sentenced to prison in 1995, his indeterminate life term conviction for violating section 273ab cannot be a super strike within the meaning of section 667, subdivision (e)(2)(C)(iv) because he was convicted long before the enactment of the Reform Act.

The logic of this argument would mean section 1170.91, subdivision (c) only excludes those Three Strikes defendants sentenced from 2012 forward, given that the super strike provisions were not added to section 667 until the Reform Act's passage in 2012. That is an odd dividing line for the Legislature to have drawn, and unsurprisingly, it is nowhere evident in the statutory language. The pertinent text of section 1170.91, subdivision (c), as we have noted, simply directs the reader to those "person[s] convicted of, or having one or more prior convictions for, an offense specified in [section 667, subdivision (e)(2)(C)(iv)]." The focus is on the *offense*, not the law under which an indeterminate life sentence is or was imposed.

### 3.

Rather than grapple with the statutory text in a manner that convinces us there is some genuine ambiguity in it, Harrison invites us to adopt an interpretation based on the legislative history of Senate Bill No. 1209 (2021–2022 Reg. Sess.) (Senate Bill 1209), the bill that, as enacted and signed by the Governor, revised section 1170.91 in 2022. The legislative history of Senate Bill 1209 is full of references to the Legislature's desire to disqualify section 1170.91 petitioners based on a demonstrated history of recidivism.[9] And

---

[9] See Senate Committee on Appropriations, Analysis of Senate Bill 1209, as amended April 25, 2022, pages 1, 3; Assembly Committee on Public Safety, Analysis of Senate Bill 1209, as amended May 19, 2022, pages 1, 6;

17

based on several of these references, Harrison suggests the Legislature sought to ensure that only those defendants with serious or violent *prior* convictions would be ineligible to receive the ameliorative benefits of section 1170.91. No matter how serious an indeterminate prisoner's life term crime may be, he posits that the Legislature intended first-time offenders like him to be eligible for resentencing consideration.

For this proposed interpretation of section 1170.91, subdivision (c), Harrison cites a June 2022 Assembly Public Safety Committee report analyzing Senate Bill 1209. The cited passage upon which he relies states that, under the proposed amendment to section 1170.91 in Senate Bill 1209, a first-time offender sentenced to an indeterminate life term for first degree murder would be eligible for section 1170.91 resentencing relief. (Assem. Com. on Public Safety, Analysis of Sen. Bill 1209, *supra,* as amended May 19, 2022, p. 6.) Whatever may have been the understanding of the person who drafted the June 2022 Assembly Public Safety Committee report, the first degree murder example it gives does not comport with the language of Senate Bill 1209 as enacted. A first-time offender who suffers a conviction for first degree murder, just like Harrison, is someone who has been "convicted of" a listed super strike described by section 667, subdivision (e)(2)(C)(iv) and, in our view, would be disqualified from section 1170.91 relief for the same reason Harrison is.

Even if there were a need to consult legislative history, we are not inclined to accept an isolated reference in a legislative committee report as controlling where it is contrary to enacted language. (See *Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 826 [" ' "[I]t is the

Senate Third Reading Analysis of Senate Bill 1209, as amended May 19, 2022, page 1.

18

language of the statute itself that has successfully braved the legislative gauntlet.  It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor.  The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' " ' "].)

Aside from this one reference to the example of a first-time offender who suffers a conviction for first degree murder, we see nothing in the legislative history of Senate Bill 1209 that is inconsistent with the reading of section 1170.91, subdivision (c), which we adopt.  Unquestionably, there are numerous references in the legislative history to a desire to exclude recidivists from accessing the ameliorative benefits of section 1170.91 resentencing, and that concern is reflected in the language excluding those with "one or more prior convictions for" a super strike.  But what Harrison overlooks is that the enacted language codifies a more broadly stated concern: The Legislature intended anyone "convicted of" a super strike at any time—*including* those with "prior convictions" for such an offense—to be ineligible for section 1170.91 resentencing.

### III.

The order appealed from is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

19

Trial Court:          Superior Court of California, County of Solano

Trial Judge:          Hon. John B. Ellis

Counsel:              David A. Kaiser, under appointment by the Court of Appeal,
                           for Defendant and Appellant.

                      Rob Bonta, Attorney General, Lance E. Winters, Chief
                           Assistant Attorney General, Jeffrey M. Laurence,
                           Assistant Attorney General, Bridget Billeter and
                           Claudia H. Phillips, Deputy Attorneys General, for
                           Plaintiff and Respondent.

*People v. Harrison* – A170760